IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JORY STRIZICH,<br><br>                    Plaintiff,<br><br>          vs.<br><br>LYNN GUYER, JIM SALMONSEN, D.J.<br>GODFREY, SCOTT MCNEIL, KRISTY<br>COBBAN, BILLIE REICH, TERI<br>GOCHANOUR, JAMES MILLIGAN, and<br>ROXANNE WIGERT,<br><br>                    Defendants. | CV 20-00040-H-BMM-JTJ<br><br><br>ORDER AND FINDINGS AND<br>RECOMMENDATION OF<br>UNITED STATES MAGISTRATE<br>JUDGE |

Plaintiff, Jory Strizich, an inmate at the Montana State Prison (MSP), filed this pro se civil rights suit pursuant to 42 U.S.C. § 1983.  Mr. Strizich was allowed to proceed in forma pauperis under 28 U.S.C. § 1915.[1]

Mr. Strizich then filed a Motion for Temporary Restraining Order and Preliminary Injunction.[2]  Shortly thereafter Defendants filed a motion for summary judgment on all of Mr. Strizich's claims.[3]  Mr. Strizich seeks to stay the summary

---

[1] See, (Doc. 4).
[2] See, (Doc. 10); see also, Defendants' Response (Doc. 30).
[3] See, (Docs. 17, 19-29, 31), Defendants Motion for Summary Judgment and Brief and supporting documents.

1

judgment proceedings[4] and has also filed a motion for subpoenas, consideration of which he seeks to defer.[5]

As explained below, the Court concludes that Defendants' motion for summary judgment should be denied without prejudice.  Mr. Strizich should be allowed to conduct discovery.  At the conclusion of discovery, Defendants may renew their motion for summary judgment.  Additionally, Mr. Strizich's motion for a temporary restraining order/preliminary injunction should be denied.

## I.    Introduction

Mr. Strizich is a state prisoner.  His complaint asserts claims under 42 U.S.C. § 1983 and the First and Fourteenth Amendments, based upon a mail policy instituted at the Montana State Prison in November of 2019.  Mr. Strizich's Amended Complaint lists nine grounds for relief: (1) Defendants violated his First Amendment right to correspond by prohibiting him from receiving greeting cards; (2) Defendants violated his First Amendment right to correspond by prohibiting him from receiving postcards featuring any type of printed design, picture, or depiction; (3) Defendants violated his First Amendment right to correspond by prohibiting him from receiving all correspondence from the public that has any sticker address, sticker label, or purchased sticker postage stamps; (4) Defendants

---

[4] See, (Doc. 33.)
[5] See, (Doc. 38 & 42.)

2

violated his Fourteenth Amendment right to due process by denying procedural protections in relation to rejected mail; and, (5-9) Defendants, acting in concert and in furtherance of an agreement, on five separate occasions between February and May of 2020, conspired to violate his First and Fourteenth Amendment rights by rejecting letters and pictures from Ashley Gavin, without procedural protections, in retaliation for a prior lawsuit, grievances, and/or other complaints Mr. Strizich made, in an effort to chill his right to petition the court.  Mr. Strizich names Defendants in both their individual and official capacities and seeks declaratory and injunctive relief, compensatory damages, punitive damages, and costs.

In response the Defendants move for summary judgment on each of the claims, asserting that: (1) Mr. Strizich failed to exhaust his administrative remedies; (2) Defendants did not violate any of Mr. Strizich's federal rights; (3) even if Mr. Strizich could show a constitutional violation, Defendants are entitled to qualified immunity in their individual capacities because the rights at issue were not clearly established; and, (4) sovereign immunity bars monetary damages against defendants in their official capacities.

## II.    Pertinent Facts

During an annual policy review it came to the attention of MSP mail room staff that there were discrepancies between the Montana Department of

Corrections ("DOC") mail policy and the MSP mail policy.[6]  Defendants Reich and Cobban brought this issue to Warden Guyer and proposed revisions to the MSP policy, citing considerations that included security concerns.[7]  On August 1, 2019, Warden Guyer sent out a Memorandum to MSP Inmates and MSP staff regarding a change in MSP Procedure 3.3.6. Inmates Correspondence, Publications & Package.[8]  The memo indicated that the changes were being made in accordance with Montana Department of Corrections policy.[9]  The Memo provided that incoming correspondence would need to be on white copy, printer, or loose-leaf paper or in the form of a standard stock postcards.[10]  Further, the memo indicated that "[d]ue to increased susceptibility for concealment of contraband" the following types of correspondence were being prohibited:

    a. Postcards featuring any type of printed design, picture, or
       depiction;
    b. Greeting cards; or
    c. Any unusually thick paper or stationery.[11]

Further, the memo provided that incoming correspondence must be written in pen or pencil.[12]  The memo also detailed that incoming correspondence containing the

_____

[6] See, (Doc. 19 at 9, ¶¶ 46-47.)
[7] Id. at ¶ 48
[8] See, (Doc. 20-3)("Immediate Change Memo").
[9] Id.
[10] Id.
[11] Id.
[12] Id.

following markings were prohibited:

    a.  Marker;
    b.  Crayon;
    c.  Colored pencil;
    d.  Glitter;
    e.  Chalk;
    f.  Lipstick; or
    g.  Any type of adhesive material.[13]

The changes set forth in the memorandum were incorporated into MSP's operational procedure ("OP") on November 1, 2019.[14]  Specifically, the OP outlined a prohibition on the following: greeting cards; postcards featuring any type of printed design, picture, or depiction; unusually thick paper or stationery; items detrimental to or posing a threat to discipline, rehabilitation, security, or order of the institution.[15]  The OP states, "[a]ll incoming correspondence from the public cannot have any address labels, stickers, purchased postage stamps on any part of the mail.  All mail must be sent with a pre-stamped envelope or USPS meter stamp indicating it was mailed directly from the USPS; exceptions may be allowed (e.g., international mail, and mail from businesses or institutions).  Any mail in violation of this policy will be returned to the sending party without notice to the inmate…"[16]  Further, the procedure noted that allowable mail enclosures

---

[13] *Id.*
[14] See generally, (Doc. 7-1; Doc. 20-4)
[15] *Id*. at 3, ("Prohibited Items").
[16] *Id*. at 4.

included written correspondence on standard size loose-leaf paper and must be typed or written in pencil or blue or black ink pen- no marker, crayon or colored pencils, chalk, glitter or lipstick.[17]

In relation to Undeliverable Mail, the OP states that mail or packages that are a clear violation will be returned to the sender without notification to the inmate.[18]  Pursuant to procedure, mailroom staff are to stamp the envelope indicating the reason for return, notifying the sender.[19]  The policy pertains to items "such as greeting cards, postcards that violated the process and envelopes containing address labels or stamps."[20]

Incoming mail and packages that are found to be in violation of the OP will be considered undeliverable and processed according to the following:

    a.  Mailroom staff will provide written notice to the inmate of rejected mail by completing and sending a Notice of Undeliverable Mail form… to the inmate. The notice will:
> 1) include the name of the sender and the reason(s) for the rejection; and
> 2) inform the inmate that the rejection of the incoming mail can be appealed by completing the appeal section of the notice form and submitting it to the mailroom within 10 calendar days of the date of the notice.

    b.  If rejection of incoming mail is appealed, a staff member uninvolved in the initial decision to exclude the mail will review the initial decision and either uphold the rejection or allow delivery of the mail;

    c.  if the rejection is overturned, the mail will be delivered to the inmate;

    d.  if the rejection is upheld, the inmate will be offered the option of having

---

[17] *Id*. at 8.

[18] *Id*. at 12 ("Undeliverable Mail," ℙ 1).

[19] *Id*.

[20] *Id*.

the mail disposed of by prison staff or having the mail returned to the original
sender at the inmate's expense; and

e.  if the inmate does not timely appeal the initial rejection decision, the mail
will be returned to the original sender at the inmate's expense.[21]

### III.    Summary Judgment

To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege that (1)
the defendant acted under color of state law, and (2) the defendant deprived him of
rights secured by the Constitution or federal law.  *Long v. County of Los Angeles*,
442 F. 3d 1178, 1185 (9th Cir. 2006); *Marsh v. Cnty. Of San Diego*, 680 F. 3d
1148, 1158 (9th Cir. 2012).  42 U.S.C. § 1983 is the appropriate avenue to remedy
an alleged wrong only if both of these elements are present.  *Haygood v. Younger*,
769 F. 2d 1350, 1354 (9th Cir. 1985).

A party is entitled to summary judgment if it can demonstrate that "there is
no genuine dispute as to any material fact and the movant is entitled to judgment as
a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is warranted where
the documentary evidence produced by the parties permits only one conclusion.
*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (1986).  Once a party has
moved for summary judgment, Fed. R. Civ. P. 56 ( c) requires the nonmoving
party to go beyond the pleadings and identify facts that show that a genuine issue

---

[21] *Id*. at 12-13, "Undeliverable Mail" ¶3.

for trial exists.  *Id*. at 248.

A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Id*. at 256.  For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that they are based on personal knowledge and set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas,* 393 F.3d 918, 923 (9th Cir.2004).

Strizich responded to Defendants' motion for summary judgment with a request to defer under Federal Rule of Civil Procedure 56(d).  Rule 56(d) gives the Court discretion to defer a motion for summary judgment if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  Accordingly, under Rule 56(d) a party seeking discovery has the burden of explaining (1) what further discovery would reveal beyond "pure speculation" and (2) that the discovery is essential to its opposition to the motion for summary judgment.  *Stevens v. Corelogic, Inc*., 899 F. 3d 666, 678 (9th Cir. 2018).  Granting summary judgment is generally disfavored "where relevant evidence remains to be discovered."  *Klingele v. Eikenberry*, 849 F. 2d 409, 412 (9th Cir. 1988).  Where "further discovery could

not elicit evidence that would raise genuine issues of material fact, summary judgment would be appropriate." *Id.*

It is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). The constitutional rights possessed by inmates, however, "are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy,* 532 U.S. 223, 229 (2001). Inmates enjoy a First Amendment right, however, to send and receive mail. *Witherow v. Paff,* 52 F.3d 264, 265 (9th Cir.1995). "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objective of the corrections system.'" *Hargis v. Foster*, 312 F. 3d 404, 409 (9th Cir. 2002)(quoting *Prison Legal News v. Cook*, 238 F. 3d 1145, 1149 (9th Cir. 2001)). "A prison regulation that impinges on an inmate's First Amendment rights is 'valid if it is reasonably related to legitimate penological interests.'" *Hargis*, 312 F. 3d at 409-10 (citing *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) quoting, *Turner v. Safley*, 482 U.S. 78, 89 (1987)

The Supreme Court has articulated four factors that are relevant in determining if the prison official's actions are reasonably related to legitimate penological goals:

> First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." *Turner,* 482 U.S., at 89 (*quoting Block v. Rutherford,* 468 U.S. 576, 586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984)). If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in its favor. *Turner,* 482 U.S., at 89–90. In addition, courts should consider three other factors: the existence of "alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the absence of ready alternatives" available to the prison for achieving the governmental objectives. *Id.* at 90.

*Shaw,* 532 U.S. at 229–30.

Strizich contends his First Amendment and Due Process rights have been violated by MSP's refusal to provide him with the mail from Gavin and failure to follow its own procedures regarding notice and process.  There appears to be a material issue of fact about when and why the mail was returned to Gavin.  Additionally, Strizich contends there is a material question as to whether there is a rational basis for the OP.  This is a legal analysis for the court to conduct utilizing the *Turner* factors.

The first *Turner* factor requires the Court to consider if there is a "rational connection between the prison regulation and the legitimate governmental interest put forth to justify it."  *Turner*, 482 U.S. at 89-90.  The Court must determine (1) whether the governmental interest is legitimate, (2) whether the governmental objective is neutral, and (3) whether the policy is rationally related to that interest.

*Thornburgh v. Abbot*, 490 U.S. 401, 414 (1989).  The Ninth Circuit has described this factor as a *sine qua non* and explained that if prison officials fail to show that the regulation at issue is rationally related to a legitimate penological goal, the court need not reach the remaining factors.  *Asker v. Cal. Dep't of Corrs.*, 350 F. 3d 917, 922 (9th Cir. 2003).

Defendants attest that the OP is not arbitrary or capricious and advances a legitimate penological interest.  Specifically, Defendants point to the stated purpose of the mail policy:

> "[t]o encourage inmate correspondence with limitations necessary to maintain facility order, security, health, and rehabilitation, and allow inmates to correspond with outside persons or organizations, receive publications, and send packages."[22]

Further, Defendants assert that allowing prohibited items would serve to facilitate the introduction of illicit drugs into MSP, which threatens violence to MSP staff and inmates, undermines the rehabilitative goals of MSP, and exposes MSP staff to potentially dangerous materials.[23]  Lead DOC investigator Crowe explains that the introduction of drugs through incoming mail, can be accomplished by applying liquified drugs, including methamphetamines and Spice, to greeting cards, post cards, and unusually thick paper materials.[24]  He further states that drugs in strip

---

[22] See, (Doc. 16 at 8, ⁋ 21.)
[23] (Doc. 29 at 18-19).
[24] (Doc. 28 at 3, ⁋ 6.)

form- such as Suboxone- can be concealed under adhesive components of mail items, such as postage stamps, inserted into the creases of envelopes, greeting cards, postcards, or multi-layered papers materials.[25]  Defendants have put forward evidence of a rational relationship between the OP and preserving order, namely preventing the introduction of contraband into the prison.

While Defendants may have met their burden under the first *Turner* factor, if a plaintiff is able to put forth evidence that "refutes a common-sense connection between a prison regulation and the objective that the government's counsel argues the policy was designed to further," the government must then come forward with evidence that the connection is not "so remote as to render the policy arbitrary or irrational." *Frost v. Symington*, 197 F. 3d 348, 357 (9th Cir. 1999) (citations omitted).

The Court would fist note that Defendants acknowledge that the OP was not amended in response to a specific incident or set of circumstances which occurred at MSP, rather the changes were made when mailroom staff realized the OP did not align with the then-current DOC policy.  Additionally, some of Investigator Crowe's affidavit seems to undermine the Defendants' position.  Crowe notes that, despite the 2019 change in  mail policy, there has actually been an *increase* in drug

---

[25] *Id*. at 4, ⁋ 7.

12

introduction through the mail, which he attributes to the cessation of in person

visitation in response to the COVID-19 pandemic.[26]  This puts the connection

between the OP and the objective it was designed to further into question.  See,

*Frost*, 197 F. 3d at 357.

Moreover, on its face the OP is concerningly broad in scope. For example,

under the OP, crayon or marker drawings, which would encompass letters from

children, are be prohibited simply because they are not written in blue or black

ink.[27]  Additionally, given the geographic makeup of Montana, some residents do

not have ready access to a pre-stamped envelope or the ability to obtain a metered

envelope from a post office, making correspondence with prisoners all the more

difficult.[28]

As set forth above, Mr. Strizich has not yet been able to conduct any

discovery in this matter.  He has identified several subject matters he wishes to

take discovery upon, including:  incident reports; investigative reports related to

drug smuggling and drug related violence; his own grievance record; descriptions

of procedures and protocols used in handling, sorting and delivering mail; how and

if his mail is treated differently; and, statistics reflecting the volume of mail

---

[26] (Doc. 28 at 3, ⁋ 5.)
[27] See, e.g., (Doc. 40-2 at 2)(Aff. Of Warner).
[28] See e.g., (Doc. 40-2 at 18-31)(Dec. of Reid Dannell and supporting documents).

processed before and after the 2019 OP.[29]

The Court will allow Mr. Strizich to conduct discovery so that he may have an opportunity to gather evidence in his effort to refute the common-sense connection between the OP and MSP's objective. Additionally, the Court would note that there appears to be a dispute regarding the issue of Mr. Strizich's exhaustion of his claims and of the due process issue relative to the Gavin letters.[30] For these reasons, the Defendants' motion for summary judgment should be denied without prejudice, allowing them to renew the motion, if appropriate, at the conclusion of discovery.

### IV.    Temporary Restraining Order/Preliminary Injunction

As a preliminary matter, the Court notes that Strizich sought leave to file his Reply to the Defendants' motion in opposition of his request for TRO/preliminary injunction.[31] Strizich explains that he attempted to timely file his reply, but prison conditions associated with COVID-19 prevented him from doing so. Strizich's motion will be granted. The Court has considered his reply and corresponding exhibit.

Strizich seeks a temporary restraining order and preliminary injunction

---

[29] (Doc. 34 at 3); see also; (Doc. 41-1)(Strizich's proposed first set of interrogatories and requests for production).

[30] Compare (Doc. 2-1 at 19-25)(Strizich's grievance records) with (Doc. 20 at 5-6)(Aff. of Reich).

[31] (Doc. 40.)

enjoining defendants, their successors, agent employees, and attorneys and all

other persons acting in concert and participation with them, from: enforcing the

new prison mail regulations upon Strizich; withholding and rejecting Strizich's

incoming mail without legitimate penological interest; denying Strizich procedural

protections for withheld and rejected mail, thereby preventing the spoliation of

relevant evidence; and, destroying any copies of Strizich's incoming mail which

are maintained in his mini, main, STG, or other prison file.[32]  Strizich asserts that

as a result of the 2019 mail policy he has been denied mail and corresponding

procedural protections.[33]  Additionally, he believes all of his incoming personal

mail is opened, inspected, and forwarded to defendant Wigert for review.[34]

Strizich claims the five letters from Gavin were withheld and rejected arbitrarily

and capriciously and that neither he nor Gavin were provided notice or procedural

protections.[35]  Strizich asserts this is in contravention of the OP which requires

prison officials provide Strizich notice and a reasonable opportunity to appeal.[36]

Strizich also believes copies of his mail that are being maintained in his prison files

are being destroyed.[37]  Strizich asserts he may suffer irreparable injury if

---

[32] (Doc. 10 at 1-2.)
[33] *Id*. at 2.
[34] *Id*. at 3.
[35] *Id*.
[36] *Id*.
[37] *Id*. at 3-4.

Defendant Wigert destroys copies of his incoming letters and that he may be prevented from pursuing additional discovery.[38]

Defendants' oppose Strizich's request for preliminary injunctive relief.[39] Defendants argue Strizich is not entitled to a preliminary injunction pending the adjudication of his claims and that the status quo should be preserved during these proceedings.[40]  Defendants assert Strizich cannot establish that he is likely to succeed on the merits of his claims.[41]  Further, they claim that the mail procedure at issue does not violate his federal rights.  Defendants argue they are in compliance with the mail processing procedures as they relate to Strizich and any failure to comply was simply an error.[42]  Defendants also claim that they have not retaliated against Strizich for any exercise of his constitutional rights.[43]

Additionally, Defendants believe Strizich is not likely to suffer irreparable harm because the challenged provisions of the mail procedure take issue with the form, not the content of items and Strizich can continue to receive permitted items.[44]  Moreover, Strizich can continue to correspond by means permitted and

---

[38] *Id*. at 4.
[39] See generally, (Doc. 30.)
[40] *Id*. at 3.
[41] *Id*. at 3.
[42] *Id.*
[43] *Id*. at 3-4.
[44] *Id*. at 4.

16

can exercise his procedural rights associated with such correspondence.[45]

Defendants believe that Strizich cannot establish the balance of equities tips in his favor or that injunctive relief is in the public interest. The Security concerns at issue and the need to preserve the health and safety of all those at MSP tips the balance in favor of Defendants. Finally, Defendants assert Strizich cannot meet his burden of a "clear showing" on any of the relevant factors, most critical being a likelihood of success on the merits.[46]

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter* v. *Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008) (citations omitted). It serves not as a preliminary adjudication on the merits, but as a tool to preserve the status quo and prevent irreparable loss of rights before judgment. *Textile Unlimited, Inc.* v. *A.. BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir. 2001). In reviewing a motion for preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations and internal quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

---

[45] *Id*. at 4-5.
[46] *Id*. at 7.

17

equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).

*Winter* does not expressly prohibit use of a "sliding scale approach to preliminary injunctions" whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance/or the Wild Rockies* v. *Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).  The Ninth Circuit recognizes one such "approach under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Id.* (citations and internal quotation marks omitted).

A preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez* v. *Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (citations omitted, emphasis in original).  A request for a mandatory injunction seeking relief well beyond the status quo is disfavored and shall not be granted unless the facts and law clearly favor the moving party. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319–20 (9th Cir. 1994).

The function of a preliminary injunction is to preserve the status quo pending a determination on the merits.  *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988).  As such, there is heightened scrutiny where the movant seeks

to alter rather than maintain the status quo.  *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that mandatory, as opposed to prohibitory, injunctions are "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party").

The Prison Litigation Reform Act mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

Based upon the record, extraordinary relief is not warranted.  While Strizich may have made a showing at this juncture that he should survive the early summary judgment motion that Defendants have filed, he has not met his burden of persuasion and has not demonstrated a clear showing that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of such an order, that the balance of equities tip in his favor, or that an injunction is in the public interest.  See, *Winter,* 555 U.S. at 20.  Mr. Strizich's motion for preliminary

injunction should be denied.

### V.      Motion for Subpoena

Mr. Strizich filed a Motion for Subpoena for Ashley Gavin ((Doc. 38), and

then subsequently filed a Motion to Defer Consideration of the Subpoena (Doc.

42). Apparently, Ms. Gavin has moved and he needs to obtain new contact

information.  The Motion for Subpoena and Motion to Defer Consideration will

both be DENIED, subject to renewal at a later date.

Accordingly, the Court enters the following:

### ORDER

1.  Mr. Strizich's motion to stay summary judgment proceedings (Doc. 33) is

DENIED.

2.  Mr. Strizich's Motion for Extension of Time to File Reply (Doc. 39) and

Motion for Leave to File Reply to Motion for Temporary Restraining

Order/Preliminary Injunction (Doc. 40) are GRANTED.

3.  Mr. Strizich's Motion for Subpoena (Doc. 38) and Motion to Defer

Consideration Regarding Motion for Subpoena (Doc. 42) are both DENIED at this

juncture.  Mr. Strizich may renew his motion for a subpoena at later date.

### RECOMMENDATION

1.  Mr. Strizich's Motion for Temporary Restraining Order/Preliminary

Injunction (Doc. 11) should be DENIED.

2.  Defendants' Motion for Summary Judgment (Doc. 17) should be DENIED without prejudice, subject to renewal at a later date.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 30th day of March, 2021.


/s/ John Johnston
John Johnston
United States Magistrate