IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JORY STRIZICH,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>LYNN GUYER, JIM SALMONSEN, D.J. GODFREY, SCOTT MCNEIL, KRISTY COBBAN, BILLIE REICH, TERRYL GOCHANOUR, JAMES MILLIGAN, and ROXANNE WIGERT,<br><br>　　　　Defendants. | CV-20-40-H-BMM-JTJ<br><br><br>ORDER |

## INTRODUCTION

Plaintiff Jory Strizich ("Strizich"), a state prisoner proceeding pro se, challenges the Montana State Prison's ("MSP") mail and grievance procedures. (Doc. 7.) Strizich brings this action against Defendants Lynn Guyer, Jim Salmonsen, D.J. Godfrey, Kristy Cobban, Billie Reich, Teri Gochanour, James Milligan, and Roxanne Wigert (collectively, "Defendants"). (*Id.* at 2–3.) Strizich asserts that MSP supervisors and officials have violated his First and Fourteenth Amendment rights. (*Id.* at 9–13.) Defendants have filed a Second Motion for Summary Judgment (Doc. 82). Strizich opposes the motion. (Doc. 127.) The Court denied Defendants' First Motion for Summary Judgment without prejudice, allowing Defendants to renew the motion following the close of discovery. (Doc. 44 at 14; Doc. 54 at 13.)

1

## BACKGROUND

Strizich filed his original complaint in April of 2020. (Doc. 2.) Strizich filed an amended complaint in August of 2020. (Doc. 7.) Strizich was incarcerated at MSP when he brought this action in April of 2020 but was transferred to a Connecticut prison in August 2021. (Doc. 66.) Strizich's complaint challenges the policy in effect during the time of his incarceration, Mail Procedure 3.3.6 ("Mail Procedure 3.3.6") and alleges that Defendants violated his First and Fourteenth Amendment rights by adopting that mail policy. (Doc. 7 at 9–13.) Strizich contends that Mail Procedure 3.3.6 contains provisions that prove arbitrary and capricious and that fail to advance a legitimate penological interest. (*Id.* at 5.) Strizich further claims that Mail Procedure 3.3.6 denies incarcerated people and the public adequate procedural protections. (*Id.* at 5–6.) Strizich seeks declaratory and injunctive relief, compensatory damages, and punitive damages. (*Id.* at 13–15.)

Mail Procedure 3.3.6 provides as follows: "All incoming correspondence from the public cannot have any address labels, stickers, purchased postage stamps on any part of the mail." (Doc. 84-11 at 3.) With some exceptions, "[a]ll mail must be sent with a pre-stamped envelope or USPS meter stamp indicating it was mailed directly from the USPS." (*Id.*) MSP will return to the sender "[a]ny mail in violation of this policy" and will not provide notice to the inmate of the rejected mail. (*Id.*) Mail Procedure 3.3.6 defines the following as "prohibited items" disallowed by

MSP: greeting cards; postcards featuring any type of printed design, picture, or depiction; unusually thick paper or stationery; or any item that proves detrimental or poses a threat to discipline, rehabilitation, security, or order of the institution. (*Id.* at 2.)

Strizich argues that Mail Procedure 3.3.6 prevented him from receiving cards, which effectively severed his "meaningful ties" with the outside community. (Doc. 7 at 7.) Strizich further asserts that MSP returned correspondence sent from Ashley Gavin to Strizich from February of 2020 to May of 2020 without affording any adequate procedural protections to either Gavin or Strizich. (*Id.*) The Court refers to prior orders of the Court, which have set forth at length the procedural and factual history of this case. (*See* Doc. 44 at 2–7; Doc. 54 at 2–5; Doc. 119 at 2–5.) Additional facts will be provided below as needed for analysis.

## LEGAL STANDARD

Summary judgment proves proper if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 317, 323 (1986). The Court must enter summary judgment if "the nonmoving party has failed to make

a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The movant bears the initial burden of informing the Court of the basis for its motion and "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* The movant satisfies its burden when the documentary evidence produced by the parties permits only one conclusion. *Anderson*, 477 U.S. at 251–52. Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but [. . .] must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

## DISCUSSION

Defendants assert that four separate grounds entitle them to summary judgment. Defendants first argue that Strizich failed to exhaust his administrative remedies. (Doc. 83 at 9–14.) Defendants next argue that Defendants' conduct did not violate Strizich's rights under the First or Fourteenth Amendments. (*Id.* at 14–27.) Finally, Defendants contend that sovereign immunity and qualified immunity bar Strizich's claims. (*Id.* at 27–31.)

A review of the record indicates that Strizich failed to exhaust his administrative remedies relative to two of his grievances. A genuine issue of material

fact exists, however, as to whether Strizich properly filed his January 2020 grievance and subsequent formal grievance. Defendants are not entitled to summary judgment on this issue. As explained below, the Court finds, however, that no constitutional violations occurred. Defendants are entitled to summary judgment on the second ground asserted. It remains unnecessary for the Court to consider qualified immunity as it applies to the present case, or reconsider Defendants' sovereign immunity argument. *See e.g.*, (Doc. 119 at 6–8.)

    **i.    First Amendment**

Strizich challenges the following three aspects of Mail Procedure 3.3.6: (1) the prohibition on greeting cards; (2) the prohibition on postcards featuring any type of printed design, picture, or depiction; and (3) the prohibition on envelopes with sticker address labels or sticker postage stamps attached thereto. (Doc. 7 at 9–10.) "A prison inmate[] enjoys a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). That right "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 85 (1987)). "[A] prison may adopt regulations which impinge on an inmate's constitutional rights if those regulations are 'reasonably related to legitimate penological interests.'" *Witherow*, 52 F.3d 264, 265 (quoting *Turner*, 482 U.S. at 89).

Prison regulations concerning incoming mail should be analyzed under the four-factor test established in *Turner*. *See Thornburgh*, 490 U.S. at 411–13; *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017). The Court should consider the following factors in determining whether the challenged prison regulation reasonably relates to a legitimate penological interest: (1) whether a valid, rational connection exists between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) what impact the requested accommodation will have on inmates, prison staff, and the allocation of prison resources; and (4) whether easy alternatives exist which could be implemented at a minimal cost to legitimate penological interests. *O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996). Courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

> **a. Whether a valid, rational connection exists between the challenged provisions of Mail Procedure 3.3.6 and a legitimate penological interest used to justify the regulations.**

Defendants argue that the prohibitions on greeting cards, post cards with printed designs, and adhesive address labels and postage stamps serve to prevent the introduction of contraband into MSP. (Doc. 83 at 18–19.) No doubt exists that MSP

6

maintains a legitimate penological interest in preventing the introduction of contraband of all types into its facility. Legitimate penological interests include the prevention of criminal activity, the maintenance of prison security, and rehabilitation. *Nordstrom*, 856 F.3d at 1272; *O'Keefe*, 82 F.3d at 326.

Jeffrey Crowe, a lead criminal investigator for MSP, submitted an affidavit that outlined the detrimental effects that the introduction of drugs into MSP poses for the rehabilitation of inmates and the safety of a correctional institution. (Doc. 84-14.) "A prison official's concern for prison security is entitled to significant deference." *Casey v. Lewis*, 4 F.3d 1516, 1521 (9th Cir. 1993). Strizich does not contest that excluding illicit substances constitutes a legitimate penological interest. Strizich instead argues that MSP's motivation behind changing the mail policy was to comply with the DOC's policy and to increase tablet messaging to earn kickbacks from CenturyLink Communications.

Strizich has presented no evidence to support his claim that MSP receives any sort of financial reward for tablet messaging and Strizich has not shown that MSP changed the mail policy to increase any such reward. Even if MSP had additional motivations in changing Mail Procedure 3.3.6, like complying with the DOC's policy, the question is whether the prohibitions in Mail Procedure 3.3.6 challenged by Strizich rationally relate to a legitimate penological interest. The Court finds that

the prohibitions do relate to the asserted interest of preventing the introduction of drugs into MSP.

Defendant Reich's sworn affidavit indicates that MSP staff previously had been exposed to potentially dangerous drugs and chemicals while processing the prohibited items. (Doc. 84-7 at 10.) Terryl Gochanour's affidavit provides that in Gochanour's experience as a mailroom clerk at MSP the prohibited items proved more difficult to process and were used to conceal contraband more often than other forms of mail. (Doc. 84-12 at 4.) Another mail clerk's affidavit explains that he observed controlled substances concealed inside mail, particularly inside the folds of paper. (Doc. 84-13 at 4.)

Jeffrey Crowe serves as a lead investigator for DOC with an office located at MSP. (Doc. 84-14 at 2.) Crowe enjoys the responsibility of conducting criminal investigations into criminal activity, like drug introductions, that occur at DOC facilities like MSP. (*Id.*) Crowe's affidavit attests that liquified drugs can be more easily applied to and consumed from greeting cards and postcards than from less durable items like letters. (*Id.* at 3.) Crowe's affidavit also attests that he has confirmed the use of this method of drug smuggling at MSP by drug testing such materials. (*Id.*) Crowe also outlined another common method for smuggling drugs into correctional facilities. (*Id.*) With that method, a mail sender obtains the drug in strip form and places it under adhesive postage stamps or address labels or inside the

creases of greeting cards and postcards that they send to an inmate. (*Id.* at 4.) Crowe has investigated these methods of drug smuggling at MSP and has confirmed the use of these methods by inmates. (*Id.* at 4–5.)

"The inquiry is whether the justifications invoked for the policy are served by the policy, not whether a different policy would serve the asserted security interests." *Casey*, 4 F.3d at 1521. Further, "unguided substitution of judicial judgment for that of the expert prison administrators on matters such as this is inappropriate." *Bell v. Wolfish*, 441 U.S. 520, 554 (1979). The challenged provisions of Mail Procedure 3.3.6 specifically target mail items that historically have been used to introduce drugs into MSP. The Court concludes that a rational connection exists between the interest in preventing contraband from entering MSP and the challenged provisions of Mail Procedure 3.3.6. This factor weighs in favor of Defendants.

### b. Whether prisoners retain alternative means of exercising the right at issue.

"Where other avenues remain available for the exercise of the asserted right, [] courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Turner*, 482 U.S. at 90 (citations and internal quotations omitted). Substantial alternative means exist for prisoners to receive mail. Inmates can receive letters, photocopies of greeting cards or postcards, and other ordinary stationary materials. Additionally, senders can use prepaid envelopes or take mail to the post office and have it metered. The Court

9

recognizes that Mail Procedure 3.3.6 may present some obstacles, especially for those in rural areas far from a post office. Strizich has failed to present evidence, however, that these obstacles have prevented his family and friends from sending him mail. The Court sympathizes with the obstacles that Mail Procedure 3.3.6 may present. Those obstacles nevertheless prove surmountable and represent reasonable, predictable consequences of maintaining order in a correctional facility. This factor weighs in favor of Defendants.

### c. The impact that Plaintiff's requested accommodation will have on inmates, prison staff, and prison resources generally.

If the "accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90. Strizich appears to argue that correctional staff could simply cut off the adhesive labels and stamps. Strizich further contends that MSP could effectively prevent contraband by limiting the size and type of cards permitted and permitting cards sent directly from outside vendors. (Doc. 127 at 24.) Defendants counter that the old mail policy permitted greeting cards with size and type restrictions and provided for correctional staff to remove all adhesive stickers as Strizich now requests. (Doc. 128 at 11.) Defendants note that MSP deemed these restrictions insufficient for preventing the introduction of contraband into MSP.

Adequately preventing contraband from being smuggled under adhesive labels and stamps would require MSP mailroom staff to ensure that all adhesives were removed from envelopes before delivery to inmates. Doing so would place an increased toll on correctional resources and require an additional step in mail processing beyond what Mail Procedure 3.3.6 requires. Defendants have noted that confirming authenticity poses an issue with Strizich's proposed alternative of allowing cards sent directly from vendors. Defendants assert without much support that the risk of tampering and forgery is too great. The Court recognizes the deference that it must afford to MSP's judgments regarding the administration of prisons. The Court also notes, however, the Defendants previously processed mail in the manner in which Strizich requested and have presented insufficient record evidence about the success of these methods. This factor does not weigh in favor of Defendants or Strizich.

### d. Whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests.

The absence of ready alternatives provides evidence of the reasonableness of a prison regulation. *Turner*, 482 U.S. at 90. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable but represents an "exaggerated response" to prison concerns. *Id.* In this context, analysis of this factor proves similar to the analysis of the previous factor. Returning

noncompliant mail surely proves less burdensome than spending time removing adhesives and inspecting cards for contraband. Strizich has proposed the vendor option for cards. It is not apparent that this alternative proves "easy," as it would require MSP to research vendors, perform background investigations into vendors, and still likely limit which vendors from which MSP would accept cards. The other alternatives by Strizich have been used by MSP before. Defendants contend, however, that these alternatives proved insufficient, resulting in a greater cost to the legitimate interest of preventing the introduction of substances into MSP. This factor weighs in favor of Defendants, but only slightly.

The Court finds that upon weighing the four *Turner* factors, the regulations contained in Mail Procedure 3.3.6 and challenged by Strizich prove rationally related to MSP's legitimate penological interest of preventing the introduction of contraband into its facility. *See Standley v. Montana*, No. 22-35824, 2024 WL 1253797, at *3 (9th Cir. Mar. 25, 2024) (affirming court's grant of summary judgment on claim that MSP's policy of prohibiting adhesive postage stamps was reasonably related to legitimate penological interests under *Turner*).

### ii. Fourteenth Amendment

The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only when a constitutionally protected liberty interest is at stake. *Tellis*

*v. Godinez*, 5 F. 3d 1314, 1316 (9th Cir. 1993) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)).

As set forth above, the version of Mail Procedure 3.3.6 in effect at the time relevant to this suit provided that any noncompliant mail, sent in violation of MSP policy, would be returned to the sender, and notice of the rejected mail would not be given to the inmate. (Doc. 84-11 at 3.) This "undeliverable mail" provision relates to obvious outward defects in the mailing, and not mail that is withheld from an inmate because of its content. Pursuant to the procedure, mailroom staff were required to stamp the envelope and indicate the reason for return to sender.

Strizich has repeatedly maintained that four or five pieces of mail sent to him by Ashley Gavin were returned without notice to him. An investigation was undertaken in response to Strizich's informal resolution. *See* (Doc. 84-17.) No record of arrival of any of Gavin's letters at MSP existed. (*Id*. at 1.) Chris Conell attempted to contact Ms. Gavin to see if she retained the returned letters. If so, Conell intended to request copies of the front and back of the envelopes, in an effort to substantiate Strizich's claims. On August 25, 2020, Conell spoke with Gavin who indicated she was busy and would call him back. (*Id*.) When Conell received no return call, he attempted to make contact with Gavin on two separate occasions. These efforts proved unsuccessful. (*Id*. at 1–2.) Because there was no evidence to substantiate Strizich's claims, the informal resolution was denied. Strizich was invited, however,

to provide additional information for Conell to investigate the matter further. (*Id.* at 2.) Strizich did not initiate any appeal of this denial in accordance with MSP's grievance procedure. *See* (Doc. 84 at 21, ¶ 114); *see also* Reich Aff. (Doc. 84-7 at ¶¶ 13–14.) Nothing exists in the record to support a finding that Gavin's letters were ever actually sent to Strizich, much less that each item independently complied with MSP policy and was withheld from Strizich without adequate process.

As set forth above, the Court finds that Mail Procedure 3.3.6 passes constitutional muster. Strizich was not entitled to receive noncompliant mail. Accordingly, the Court agrees with Defendants' argument that due process concerns have been satisfied if an inmate is not deprived of a constitutional right. *See e.g.*, (Doc. 128 at 13) (citing *Sikorski v. Whorton*, 631 F. Supp. 2d 1327, 1346–49) (D. Nev. 2009)) (additional citations omitted). Strizich had no constitutional right to receive noncompliant mail. No corresponding right exists that Strizich be provided notice if and when non-compliant items were returned to the sender. The Court finds no Due Process violation.

Throughout these proceedings, Strizich has maintained that he possesses a reasonable expectation of being returned to MSP. *See e.g.*, (Doc. 117 at 3–4.) In the event that he is, Strizich is advised that on August 1, 2023, Warden Salmonsen revised MSP Procedure 3.3.6 to state:

> Incoming mail or packages that are a clear violation of the procedure will be returned to the sender <u>with notification to the inmate</u>. This includes items such

14

> as greeting cards, post cards that violate the process and envelopes containing address labels or stamps. Mailroom staff will stamp the envelope indicating the reason for return, <u>notifying the sender and inmate. The notice provided to an inmate will include a photocopy of the returned mail item so that the inmate can see what violation caused the mail to be returned</u>.

(emphasis added). On August 4, 2023, Warden Salmonsen directed staff to post the revised procedure as a mandatory read on inmate tablets. On August 29, 2023, Warden Salmonsen also directed staff to give notice of the revised procedure by broadcasting it on the inmate television station and posting it on housing unit bulletin boards. *See e.g., Evans v. Salmonsen*, Cause No. CV-22-56-H-BMM, Reply (Doc. 33 at 2–3); Aff. of Salmonsen) (Doc. 33-1, ¶¶ 4–11.) Thus, the notice issue of which Strizich complains is not capable of future repetition under the current revision to the policy.

## CONCLUSION

Strizich has failed to establish that constitutional violations occurred. Defendants are granted summary judgment on that basis. It is unnecessary to consider the additional grounds Defendants advance in their summary judgment motion.

Based on the foregoing, **THE COURT ORDERS:**

1. Defendants' second motion for summary judgment (Doc. 82) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendants and close the case file.

2. Strizich's motion to compel (Doc. 120) and motion to strike (Doc. 129)

are **DENIED AS MOOT** in light of the grant of summary judgment.

3. The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit.

DATED this 10th day of July, 2024.

_____
Brian Morris, Chief District Judge
United States District Court